851 P.2d 151

Eldon Salvador ESCALANTI,
Plaintiff–Appellant,

v.

DEPARTMENT OF CORRECTIONS, Samuel Lewis, Director of Prisons for the State of Arizona, Maricopa County Sheriff's Office, Thomas Agnos, Maricopa County Sheriff, Arizona Prison—Tucson, Jim Thomas, Santa Rita Unit, Jeff Hood, Deputy Warden, and The State of Arizona, Respondents–Appellees.

No. 1 CA–HC 92–0001.

Court of Appeals of Arizona,
Division 1, Department B.

April 20, 1993.

Grant Woods, Atty. Gen. by Ronald M. Andersen, Asst. Atty. Gen., Phoenix, for respondents-appellees.

Thomas E. Higgins, Jr., Tucson, for plaintiff-appellant.

## OPINION

JACOBSON, Judge.

■ This habeas corpus action requires us to determine whether petitioner Eldon Salvador Escalanti is parole eligible because "copper time" and "double time" credits he earned while in prison should apply to his minimum sentence.[1]

The facts are not in dispute. On May 27, 1977, Escalanti was sentenced to a prison term of twenty years to life after a plea of guilty to second degree murder under the sentencing provisions of the "old code." Escalanti was a first time offender. The Arizona Department of Corrections (ADOC) calculated his parole eligibility date to be October 8, 1996. Escalanti contends that he was parole eligible on December 8, 1987.

■ Escalanti argues that, under statutes in effect at the time of his sentencing,

his statutory credits under A.R.S. § 31–251 ("copper time") and A.R.S. § 31–252 ("double time") must be subtracted from his minimum sentence. These statutes on their face contradict such an interpretation. The version of A.R.S. § 31–251(B) in effect at the time Escalanti was sentenced provided in pertinent part:

B. Every prisoner faithfully performing [the labor specified in subsection A] and conforming in all respects to the rules, or if unable to work, but complying in all respects to the rules, shall be allowed, *from the maximum term of his sentence*, a deduction of two months in each of the first two years, four months in each of the next two years, and five months in each of the remaining years of the term.

Laws 1974, ch. 137, § 1, repealed by Laws 1977, ch. 142, § 181 (emphasis added). The version of A.R.S. § 31–252 in effect at the time Escalanti was sentenced provided in pertinent part:

A prisoner under commitment to the department, while working ... as a trusty outside the prison walls and without requiring armed guards, or performing any other assignment of confidence and trust either within or without the prison walls ... shall be allowed double time while so employed, and each day so employed shall be counted as two days in computing time on his or her sentence which shall be deducted from *the maximum term of such prisoner's sentence.*

Laws 1974, ch. 137, § 2, repealed by Laws 1977, ch. 142, § 182 (emphasis added). Undaunted by this clear statutory language, Escalanti emphasizes the language of A.R.S. § 31–411 to argue that former A.R.S. §§ 31–251 and 31–252 do not mean what they say.

The version of A.R.S. § 31–411 in effect at the time of Escalanti's sentencing pro-

---

**1.** Although Escalanti claims he should be released because of the Department of Corrections' alleged miscalculation of his parole eligibility date, absolute release would not be an appropriate remedy in this case. Because, fairly construed, Escalanti's claim is not that he was "unlawfully committed, detained, confined or restrained of his liberty," but rather is a claim

that the Department of Corrections has miscalculated his parole eligibility date, habeas corpus is not the appropriate vehicle for raising this issue. A.R.S. § 13–4121. It is apparent the trial court treated the matter as a special action in reaching the merits of the petition. The state did not object, and we, likewise, reach the merits of the petition.

vided, in part, that any prisoner who met either of the following requirements may apply to the board of pardons and paroles "for release upon parole, or for an absolute discharge:"

1. Any prisoner who has served one-third of his or her maximum sentence, computed without any time deductions credited, if such prisoner has served more than one calendar year; or

2. Any prisoner who has less than sixty days left before expiration of his or her minimum term, whichever is less.

Laws 1974, ch. 137, § 4, amended by Laws 1977, ch. 142, § 183, repealed by Laws 1978, ch. 164, § 14. Escalanti argues that, because under the first requirement of A.R.S. § 31–411, time deductions are not to be considered at all in determining who can apply for "parole or discharge," then such credits must be applied in determining "parole or discharge" under the second requirement, that is, a deduction from the minimum sentence.

This convoluted analysis is supported by reference to a case in which the court did in fact hold that "good time" credits are to be deducted from the minimum sentence. *State v. Rice*, 110 Ariz. 210, 516 P.2d 1222 (1973). Following *Rice*, however, the legislature amended the statutes involved to provide that credits accumulated under A.R.S. §§ 31–251 and 31–252 be deducted from the maximum sentence only. As our supreme court has stated:

Since 1974 the credits for "good behavior" (A.R.S. § 31–251) and "double time" (A.R.S. § 31–252) have been allowed as deductions only from the maximum term of a prisoner's sentence.... Any statutory credits are applicable to the maximum term.

*Arnold v. Moran*, 114 Ariz. 335, 336, 560 P.2d 1242, 1243 (1977).

In addition, we interpret the time credit provisions under former A.R.S. §§ 31–251 and 31–252 to apply when the prisoner is entitled to release upon completion of sentence, not to parole eligibility. If a prison-

er acquires credits on his or her sentence under A.R.S. §§ 31–251 or 31–252, these credits reduce the maximum sentence, and that prisoner is entitled to absolute release—having served the imposed term.

This is not the relief Escalanti requests. Rather, he contends that his credits under the "copper time" and "double time" statutes entitle him to consideration for parole. In our opinion, these statutes do not relate to parole. The qualifications for parole are controlled exclusively by A.R.S. § 31–411. Under this statute, a prisoner is entitled to parole consideration either upon serving one-third of the maximum sentence, or when the prisoner has less than sixty days to serve on the minimum sentence. Because Escalanti has a maximum of "life" and this term is incapable of being ascertained so as to call into play subsection (1) of the statute, Escalanti's parole eligibility under the statute is determined by subsection (2).

■ Escalanti argues that, under this interpretation of the statute, he can never receive the benefit of credits earned under A.R.S. §§ 31–251 and 31–252. We posed this question to counsel to answer in the form of supplemental briefs. Although counsel draw differing conclusions, both basically concede that it is impossible to deduct time from an indeterminate denominate—a person's life.

We agree. The fact that Escalanti's is an indeterminate maximum sentence does not alter the interpretation of the statute; it simply means that, as a practical matter, he will not receive any reduction in his sentence because of any statutory credits. *Lawrence v. Arizona Dep't. of Corrections*, 151 Ariz. 599, 600, 729 P.2d 953, 954 (App.1986). We therefore conclude that, when the legislature specifically provided that credits are to be deducted from the maximum sentence imposed, it abolished such credits for a maximum term of life in prison.[2]

---

2. ADOC argues that, in the event Escalanti's life sentence was somehow changed to a maximum term in years, then the credits that he earned while serving a life sentence would be deducted from the new determinate sentence.

For the foregoing reasons, we deny relief.

EHRLICH, P.J., and GERBER, J., concur.